**IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC. AND COXCOM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HISCOX INSURANCE COMPANY, INC., AND ACE AMERICAN INSURANCE COMPANY, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Cox Enterprises, Inc. ("CEI"), Cox Communications, Inc. ("CCI"), and CoxCom, Inc. ("CoxCom") (collectively, "Cox"), for their complaint for Breach of Contract against Defendants Hiscox Insurance Company, Inc. ("Hiscox") and ACE American Insurance Company ("ACE"), allege as follows:

**NATURE OF THE ACTION**

1. This action arises out of Hiscox's refusal to honor its obligations under the US TMT Multimedia Liability Policy, Policy No. US UUA 2619952.11, issued to CEI by Hiscox for the policy period of December 1, 2011 to December 1, 2012

(the "Hiscox Policy"), and ACE's refusal to honor its obligations under the Excess Liability Insurance Policy, Policy No. XEO G24586261 003, issued to CEI by ACE for that same policy period (the "ACE Policy") (together, the "Policies"). Pursuant to the Policies, Defendants agreed to insure against, among other things, losses arising out of the media activities of CEI and its subsidiaries.

2. In 2014, CEI, CCI, and CoxCom were all named as defendants in a lawsuit filed in the Eastern District of Virginia by BMG Rights Management (US) LLC ("BMG") and Round Hill Music LP ("Round Hill"). The plaintiffs alleged that Cox, operating as an internet services provider, materially contributed to widespread copyright infringement by providing the "pipes, system, and technology" necessary for the transmission of the infringing content and by providing continued access to these "facilities" to customers it knew to be repeat infringers (the "BMG Action").

3. Cox settled the claims asserted against it in the BMG Action.

4. Cox timely submitted to Defendants its claim for insurance coverage for liabilities and costs incurred in connection with the BMG Action (the "Claim").

5. Defendants have denied coverage for the Claim and have not reimbursed Cox for any liabilities or costs incurred by Cox in connection with the BMG Action.

6. In this lawsuit, Cox seeks damages for Defendants' breach of their contractual obligations to provide insurance coverage for the Claim.

## THE PARTIES

7. CEI is a corporation incorporated in Delaware, with its principal place of business in Georgia.

8. CCI is a corporation incorporated in Delaware, with its principal place of business in Georgia. During the relevant policy period, CEI owned more than 50% of CCI.

9. CoxCom is a corporation incorporated in Delaware, with its principal place of business in Virginia. During the relevant policy period, CEI owned more than 50% of CoxCom.

10. Hiscox is a corporation incorporated in Illinois, with its principal place of business in Illinois.

11. ACE is a company organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

13. Venue in this District is proper under 28 U.S.C. § 1391(a) and (c) because the events and omissions giving rise to the controversy occurred in this District, and Defendants transact business and are subject to personal jurisdiction in this District.

## THE FACTS

### A. The Policies

14. The Hiscox Policy (annexed hereto as Exhibit A) covers claims arising from Cox's media activities during the policy period spanning December 1, 2011 to December 1, 2012. (Exhibit A, Declarations, § II).

15. The Hiscox Policy has an aggregate policy limit of $15,000,000, inclusive of defense costs and damages, subject to a $500,000 per-claim retention. (*Id.*, Declarations, § III).

16. The basic insuring clause for the Hiscox Policy provides:

> **We** will indemnify **you** for **defense costs** and **damages** incurred as a result of a **claim** that falls within WHAT HAS TO GO WRONG (Section II) under this policy, WHAT WE WILL PAY (Section IV) under this policy, and HOW MUCH WE WILL PAY (Section V) under this policy.

(*Id.*, § 1).

17. The Hiscox Policy defines "**you**" to include "any **existing subsidiary**," which is further defined as any entity in which CEI owns more than 50% of the assets

4

or outstanding shares and whose revenue is included in the application for the Policy. (*Id.*, § VIII).

18. To qualify for coverage, a claim must fall within the "**What has to go wrong**" section of the Hiscox Policy, which provides that the Hiscox Policy covers:

> The performance of **media activities** by you or anyone on your behalf during the policy period results in a **claim** against you that arises from **covered media** or **advertising**, regardless of when such **claim** is made or where such claim is brought, and including but not limited to any claim for any actual or alleged:
>
> a. copyright infringement, trademark infringement, trademark dilution, trade dress infringement, publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off or any misappropriation of content, formats, characters, trade names, character names, titles, plots, musical compositions, voices, slogans, graphic material or artwork.
>
> \* \* \*
>
> m. any form of negligence (including any negligent act, negligent error, negligent omission, negligent misrepresentation, negligent misstatement, including negligent transmission of a computer virus) but only where arising from your media content disseminated in covered media or advertising.

(*Id.*, § II).

19. The Hiscox Policy defines "**media activities**" as:

> 1. the gathering, acquisition, investigation, collection, researching, creation and compilation of **media content**;

5

>    2. any broadcast, transmission, dissemination, telecast, cablecast, syndication, serialization, podcast, streaming, or production of **media content**;
>    3. any publication, republication, or dissemination of **media content** including any special editions or supplements to such **media content**;
>    4. any digital, online, or electronic dissemination of **media content**;
>    5. the release, distribution, licensing, sale, lease, or exhibition of **media content**. . . .

(*Id.*, § VIII).

    20.    The Hiscox Policy defines "**media content**" as:

>    the substance of any communication of any kind whatsoever within **covered media** or **advertising**, regardless of the nature or form of such "media content" or the medium by which such "media content" is communicated, including but not limited to language, data, facts, fiction, music, photographs, images, advertisements, artistic expression, or visual or graphical materials.

(*Id.*).

    21.    The Hiscox Policy defines "**covered media**" as:

>    All publications, programming, and other communications (but not including ordinary business communications not directly related to the preparation, dissemination or promotion of your multimedia products) produced or disseminated by you; including but not limited to content of personal appearances by you and all content disseminated via web sites owned or operated by you.

(*Id.*, Declarations Page, § III).

22. The ACE Policy (annexed hereto as Exhibit B) follows the terms and conditions of the Hiscox Policy. (Exhibit B, Declarations, Section I & Endorsement No. 8).

B. **The BMG Action**

23. BMG filed its initial complaint on November 26, 2014.

24. BMG filed its First Amended Complaint on December 10, 2014 (the "FAC," annexed hereto as Exhibit C).

25. In the FAC, BMG alleged that Cox was vicariously and contributorily liable for acts of copyright infringement by its subscribers.

26. Specifically, BMG alleged that Cox "materially contributed to the unauthorized reproductions and distributions" of numerous "Copyrighted Musical Compositions" by providing the "site and facilities necessary for its subscribers to commit direct copyright infringement, by providing access to the Internet and the pipes, system, and technology that allows for the storage and transmission of data," and by refusing to terminate the infringing "subscribers' or account holders' accounts or otherwise act effectively in response" to "copyright infringement notices sent to Cox." (Exhibit C, ¶¶ 37-39).

27. As described by the Eastern District of Virginia, BMG presented evidence that it claimed demonstrated that "between February and August of 2014" alone, the copyright monitoring and enforcement company Rightscorp Inc. was able to download "approximately 150,000 complete copies of the works at issue from individual peers using Cox IP addresses that had previously been identified as offering the works for download." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns*, 199 F. Supp. 3d 958, 970 (E.D. Va. 2016), *aff'd in part, rev'd in part*, 881 F. 3d 293 (4th Cir. 2018).

28. Cox has at all times disputed BMG's allegations.

29. In August 2018, BMG and Cox settled the BMG Action.

30. The amount of defense costs incurred by Cox in its defense of the BMG Action alone exceeds the amount of the Hiscox Policy's remaining limit.

C. **Hiscox's Denial of Coverage**

31. CEI provided timely notice of the BMG Action to Defendants.

32. In a letter dated June 22, 2015, Hiscox denied coverage for the Claim.

33. In a letter dated May 6, 2016, ACE denied coverage for the Claim.

34. In January 2016, Cox formally requested that Defendants mediate the parties' dispute concerning coverage for the Claim.

35. A mediation took place, but it did not resolve the parties' coverage dispute.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

36. Cox repeats and realleges each of the foregoing the allegations as if fully set forth herein.

37. Cox has complied with all terms, conditions, and prerequisites to coverage set forth in the Policy and remains ready to perform all of its obligations under the Policies.

38. Pursuant to the terms of the Policies, Defendants are obligated to indemnify Cox for all sums that Cox has paid or has or will become obligated to pay in connection with the BMG Action, including the costs incurred by Cox in its defending the BMG Action and the payment that effectuated the settlement of the BMG Action.

39. Defendants have breached their obligations under the Policies by denying coverage and refusing to indemnify Cox for the liabilities and costs incurred by Cox in connection with the BMG Action.

40. As a result of Defendants' breaches of their obligations under the Policies, Cox has suffered and continues to suffer damages in an amount to be determined at trial, but greater than the Hiscox Policy's remaining available limit.

## **PRAYER FOR RELIEF**

WHEREFORE, Cox respectfully requests that the Court enter a judgment:

(a) Awarding Cox damages against Defendants in an amount to be determined at trial;

(b) Awarding Cox all reasonable costs incurred by Cox as a consequence of having to prosecute this action, including attorneys' fees, as well as pre-judgment interest and post-judgment interest; and

(c) Granting Cox such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Cox demands a trial by jury on all Counts so triable.

*[Signature Appears on Following Page]*

Dated:  April 24, 2024.

Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein
Georgia Bar No. 266019
Matthew A. Keilson
Georgia Bar No. 216676
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
T: 404-418-8307
E: ryan@wtlaw.com
  mkeilson@wtlaw.com

and

Joshua L. Blosveren (*pro hac vice forthcoming*)
Bradley J. Nash (*pro hac vice forthcoming*)
**HOGUET NEWMAN REGAL & KENNEY, LLP**
One Grand Central Place
60 E. 42nd Street, 48th Floor
New York, New York 10165
Telephone:  212.689.8808
Facsimile:  212.689.5101

*Attorneys for Plaintiffs Cox Enterprises, Inc., Cox Communications, Inc., and CoxCom, Inc.*